Kessler, Adm., Appellant, v. Phila. R. T. Co.

Argued September 30, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE, STADT-FELD and PARKER, JJ.

*N. S. Winnet,* and with him *B. I. DeYoung,* for appellant.—If, on one aspect of the plaintiff's testimony contributory negligence is shown, and on the other aspect it is not, the case is for the jury: Whitman v. Stipp, 270 Pa. 402; McMahon v. Reading Transit & Light Co., 280 Pa. 199.

*Jay B. Leopold,* and with him *Bernard J. O'Connell,* for appellee, cited: Black et al. v. Phila. Rapid Transit Co., 239 Pa. 463.

OPINION BY CUNNINGHAM, J., December 16, 1932:

Harry A. Kessler was the owner of a two and one half ton Mack truck which was struck and damaged

by a trolley car of the Philadelphia Rapid Transit Company, shortly after five o'clock on the evening of December 31, 1930, at the intersection of Chelten Avenue, an east and west street, with Limekiln Pike, running north and south, in the city of Philadelphia. At the time of the collision, James Glover, an employe of Kessler, was operating the truck, loaded with flour, on his employer's business. Alleging that the damages had been caused by the negligent operation of the trolley car, Kessler instituted his action in trespass in the Municipal Court of the county of Philadelphia; at the conclusion of the testimony in his behalf the trial judge, KNOWLES, J., entered a nonsuit upon the ground of Glover's contributory negligence and this appeal is from the refusal of the court below to take it off. The death of Kessler occurred during the pendency of the appeal in this court and his administrator was substituted as appellant.

Glover was driving the truck north on Limekiln Pike at a rate of approximately thirteen miles per hour until he reached the south side of Chelten Avenue when, according to his statement, he went into first gear and proceeded at a rate of seven miles. There are two tracks on Chelten Avenue and the trolley car was approaching from the west upon the southern one; that avenue is forty feet in width from curb to curb and Limekiln Pike thirty-six. The distance from the house line on the south side of Chelten Avenue to the first, or eastbound, trolley track is twenty-two and a half feet. When the truck was almost clear of the eastbound track, the trolley car struck its rear end, overturned it and pushed it toward the northeast corner of the streets.

A material inquiry at the trial was whether Glover fulfilled the duty devolving upon him of looking for approaching cars immediately before entering upon the tracks. The ground for the nonsuit was that it

affirmatively appeared from Glover's own testimony that he neglected to look after entering upon the cartway of Chelten Avenue and thus contributed to the infliction of the damages and defeated his employer's right to recover, although defendant's motorman may also have been negligent. The issue thus arising requires a careful examination of his testimony.

His statements upon direct examination read: "Q. As you came to Chelten Avenue what, if anything, did you do? A. I looked to my left. Q. Where were you when you first looked? A. At the curbstone. . . . . . . Q. And what, if anything, did you see? A. I saw a trolley car about—about three hundred feet from me. . . . . . . Q. When did you next see the trolley car? A. I seen the trolley car as I was approaching the first section of the track. Q. That is, the eastbound track? A. Yes, sir. Q. Where was the trolley car at that time? A. About two hundred feet away from me. Q. About how many? A. Two hundred or one hundred and fifty feet—something like that. Q. About how many house lines away was it? A. About five house lines. Q. And then what did you do? A. I continued to move. Q. How far did you get before anything happened? A. The rear of my truck was going across the eastbound trolley track and I was going ahead straight. Q. And then what happened? A. I didn't know nothing then. Then, my truck got hit."

If this testimony had not been materially modified the case would have been for the jury as there was evidence from which a jury could reasonably have found negligence upon the part of the motorman. On cross-examination, however, Glover testified: "Q. Where was the front of your truck when you first noticed the trolley car? . . . . . . A. When I first seen the trolley car was when I was approaching the intersection at the curbstone. I continued to move on. Q. The front of your truck had gotten to the curbstone? A. Yes.

sir. I saw the trolley car about three hundred feet away. ...... Q. All right. Now, did you see the trolley car again? A. I seen the trolley car about five house lines down from me. ...... Q. And where was the front of your truck at that time? A. The front of my truck was in the westbound trolley track. ...... Q. Did you continue to watch the trolley car then? A. I couldn't. I was crossing. Q. You were crossing that track and you didn't bother about it any more? A. I continued on across. Q. How long is your truck? A. About twenty feet, I guess. ...... Q. Now, do I understand you correctly to say you saw this trolley car at two different times? A. I saw it twice. Q. First, as you came to the curb line when you saw it about three hundred feet away? A. Yes, sir. ...... Q. Then you saw it again when you came to the westbound track when, I believe you said, it was five house lengths away? A. Yes, sir. Q. How many feet would you say that was? A. I couldn't exactly say. Q. Well, now, you gave us the distance of three hundred feet. Why change your distance to house widths afterward? A. About twenty feet or twenty-five feet—something like that. Q. Twenty or twenty-five feet away from you? That is the distance you figure five house widths to be? Is that it? A. I guess so. Q. And, of course, right after you saw it the second time, you were hit? A. I was going across the westbound trolley track and when my front got across the west I was hit and I didn't know nothing else.''

Counsel for plaintiff then attempted a re-direct examination for the stated purpose of clearing up the contradiction in the testimony of his witness with respect to his location when he looked the second time. The trial judge then conferred with counsel at sidebar for the purpose of determining upon a proper method of directing the attention of the witness to his contradictory statements and affording him an opportunity

to state which answers were correct. It seems to have been agreed that counsel for the defendant should proceed with his cross examination; the record shows that the trial judge, at the conclusion of the conference, said, "Mr. Leopold [counsel for defendant] has the witness."

The examination then continued. "By Mr. Leopold: Q. Glover, I wish you would tell us again just where your truck was when you saw the trolley car the second time? A. The second time I saw the trolley car, the truck was in the—would be in the eastbound trolley track—the eastbound rail. By the Court: Q. You have already told us, ...... the second time you saw the trolley car, your truck was going in the westbound track and the trolley car was five house lengths away. Now, what is the answer as to where you were? A. I was going on the Limekiln Pike. Q. We do not want you to start all over again. The Court: (To Mr. Leopold) Ask him a definite question. By Mr. Leopold: Q. Where was your truck the second time you saw the trolley car? A. It was going from the eastbound trolley track to the westbound trolley track. Q. Going from the eastbound to the westbound, you mean? A. Yes, sir. I was going into the westbound. ...... The Court: Shall I ask him the question? Mr. Leopold: Gladly. By the Court: Q. I want you to listen very attentively to this question and I wish you to answer it. You testified at one time in your examination as follows: 'When close to the curb, I looked to the left and I saw the trolley car about three hundred feet away from me, going toward the east, and then I went into first gear and dropped down to seven miles an hour, and I next saw the trolley car when I was approaching the eastbound track and at that time it was about one hundred and fifty to two hundred feet away or about five house lengths.' You have testified as follows in answer to Mr. Leopold's question: 'Where was

the truck the second time you saw the trolley car?' Answer: 'It was going from the eastbound trolley track to the westbound trolley track.' Which of those answers is true? A. About five houses away. Q. That does not answer the question at all. A. I was hit." The trial judge then directed the stenographer to repeat the question to the witness from his notes. The reply of the witness was: "As I was getting from the eastbound track into the westbound, the trolley was about five houses." Counsel for plaintiff again sought permission to examine the witness further but the trial judge sustained the objection of counsel for defendant and granted an exception, remarking: "I have given him [the witness] a proper question" and " the answer is perfectly plain."

A majority of the members of this court think the only inference to be drawn from the testimony of the driver of plaintiff's truck is that he looked to the west when the front of his truck was about to enter the cartway of Chelten Avenue, saw an approaching trolley car, and then proceeded across the southern portion of the cartway and entered upon the tracks without again looking in the direction from which he knew the car was approaching. His statement upon cross examination was clearly inconsistent with that made by him upon direct; the trial judge fairly and distinctly directed his attention to the contradiction, asked him which statement was true and afforded him every opportunity to explain the discrepancies in his testimony. His final answer was that he had entered upon the tracks and was passing from the eastbound to the westbound when he looked the second time.

Ordinarily where the testimony of a plaintiff, or of his witnesses, in a negligence case is so contradictory or inconsistent that in one aspect it shows contributory negligence and in the other does not, it is for the jury to reconcile the conflicting statements and determine

which shall prevail. The reason for the rule is that a plaintiff does not have the burden of disproving contributory negligence.

If counsel for plaintiff in the case at bar had been content to let the conflicting statements of the driver stand as made, the rule would have been applicable. He elected to direct the attention of the witness to the material discrepancies in his testimony and to endeavor to obtain a definite and clear statement upon an important feature of the case. This was entirely proper; the whole purpose of the trial was to elicit the truth.

The effect, however, was to bring this case within the operation of the principle thus stated by our Supreme Court in Black et al. v. Philadelphia Rapid Transit Co., 239 Pa. 463, at page 466: "In his examination, the plaintiff's statements of the occurrence were contradictory. On some of them he was entitled to go to the jury and on some he was not and the net result of his testimony was in doubt. If his examination had rested here, it would have been for the jury to have reconciled the conflicting statements: Ely v. Railway Co., 158 Pa. 233; Cronmuller v. Evening Telegraph, 232 Pa. 14. But it did not rest here. The plaintiff's attention was called to the contradictions in his testimony and the irreconcilable statements he had made were pointed out to him and he was asked which of them were correct. His final statement of the fact is that by which his case must be judged and as it showed contributory negligence, a nonsuit was properly entered."

Here, as there, the final answer of the witness removed the doubt created by his previous answers and, in our opinion, showed affirmatively his contributory negligence. We are not in accord with the contention of counsel for appellant to the effect that the manner in which the trial judge participated in the examination confused the witness and amounted to an abuse of

judicial discretion. It seems to have been a sincere and proper effort to develop the truth of the case.

The judgment is affirmed.